IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK A. PALLOTINO, SR., and
MARK S. PALLOTINO, JR.,

        Plaintiffs,

                              No. CIV-06-06 JC/WDS

vs.

CITY OF RIO RANCHO, ACTING CHIEF OF POLICE
CAPT. MICHAEL BAKER, and DAVID HUBBARD;
JEREMY MELTON; BRIAN LINK and ROBERTA
RADOSOVICH, S.W.A.T. TEAM COMMANDER, LT.
SCOTT KELLOGG, JOHN OR JANE DOES 1-X, in their
official and individual capacities,

        Defendants.

**MEMORANDUM OPINION & ORDER**

THIS MATTER comes before the Court on *Defendants' Motion for Partial Summary Judgment*, filed on September 21, 2006 (*Doc.* 14)("Motion"). The Court, having considered the Motion, the parties' briefs, Plaintiffs' Complaint, the relevant authority, and being otherwise fully advised, grants the Motion in part and denies it in part.

**I.     Background**

On the night of March 12, 2003, Mark Pallotino Sr. ("Plaintiff") received a telephone call from his friend Michael Ginan regarding an earlier dispute with a neighbor, Harry Grant. Plaintiff[1] drove to Mr. Ginan's house and shortly thereafter walked across the street to speak to Mr. Grant in order to mediate the earlier dispute between the parties. After knocking on the door

---

[1] Since the Motion does not seek to dismiss the sole claim by Mark Pallotino Jr., the Court will refer to Mark Pallotino Sr. as Plaintiff.

1

twice and receiving no response, Plaintiff decided to retreat back to Mr. Ginan's home.  On his way back across the street, Plaintiff stated that he noticed another individual, later identified as Steve Ponce, in the vicinity of Mr. Grant's home.  At that point, Plaintiff saw Mr. Grant come from the side of the house and attack Mr. Ponce with a weed burner.  Plaintiff decided to intervene and removed the weed burner from Mr. Grant's grasp.  He then retreated back to his car, leaving the weed burner behind.  Sometime during the altercation, Mr. Grant was stabbed multiple times by Mr. Ponce.

The next morning, Plaintiff was informed by police outside of his home that Mr. Grant had died from stab wounds sustained the previous evening.  After being told that detectives wanted to interview him, Plaintiff was asked if he would come down to the police station to make a voluntary statement.  Plaintiff agreed to meet the detectives and was driven to the station to be interviewed.  As is customary for police interviews, the conversation was tape-recorded and may have been video-taped, although the videotape was apparently lost.  Plaintiff was free to go after the interview.  On March 13, 2003, Officer Brain Link submitted an affidavit for arrest warrant for Plaintiff, which was signed by a magistrate judge on March 14, 2003.

At approximately 2:00 a.m. on March 15, 2003, SWAT team members forcibly entered Plaintiff's home in order to serve the arrest warrant. They did not knock and announce prior to entering.  While on the premises, the SWAT team members also encountered Plaintiff's son, Mark Pallotino Jr.  Though handcuffed prior to the arrest and removal of his father, Mark Pallotino Jr. was ultimately released before the SWAT members left the premises.  As a result of this incident, Mark Pallotino Jr. allegedly re-injured his shoulder.

Plaintiff was immediately taken to the county jail and booked on charges of murder,

conspiracy to commit murder and aggravated assault.[2]  On March 17, 2003, bail was initially set for $750,000.  It was reduced to $500,000 and eventually to $100,000.  Before making bail some forty days after his arrest, Plaintiff was incarcerated in a separation cell away from the general population. On March 21, 2003, Plaintiff was indicted on both counts.  Plaintiff was brought to trial on August 31, 2003.  On September 8, 2003, a jury acquitted Plaintiff of murder and conspiracy to commit murder.

On December 5, 2005, Plaintiffs brought the instant lawsuit in state court against the City of Rio Rancho ("City"), Michael Baker, David Hubbard, Jeremy Melton, Brian Link, Roberta Radosovich, Scott Kellog and John and Jane Does 1-X, each in their official and individual capacities ("Officers").  The complaint consists of nine claims (the individual causes of action are erroneously numbered to show ten claims for relief) alleging malicious abuse of process, defamation of character, six other claims under 42 U.S.C. § 1983 and one claim of excessive force in violation of the Fourth Amendment.  The suit was removed to this Court on January 5, 2006.  Through this Motion, Defendants seek a dismissal of six of the counts in the Complaint.

**II.     Legal Standard**

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P 56(c).  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  To overcome summary judgment, "the movant need only to point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law."  *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002).  The Court will

---

[2]The aggravated assault charge was later dropped.

grant summary judgment "if the movant establishes entitlement to judgment as a matter of law given [the] uncontroverted, operative facts. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  The party opposing the motion may not rest on mere allegations or denials of pleadings, but must set forth specific facts showing a genuine issue for trial.  *Anderson*, 477 U.S. at 256.

**III.**     **Analysis**

Plaintiff has brought various claims under 42 U.S.C. § 1983 against the City and each of the Officers, both in their official and individual capacities.[3]  In addition, Plaintiff alleges two supplemental state claims for malicious abuse of process and defamation of character. The majority of Plaintiff's claims hinge upon whether there was a previous finding of probable cause at the state court level and if not, whether there was probable cause to arrest Plaintiff at all.  The Court answers both in the affirmative as set forth below.

    A.     Count III - § 1983 Malicious Abuse of Process

The Court must first distinguish between Count I and Count III of the Complaint. Plaintiff designates Count I as a claim for malicious abuse of process under state law, while Count III is designated as a claim for malicious abuse of process under 42 U.S.C. § 1983.  The Court notes that under New Mexico law, the appropriate cause of action is malicious abuse of process, while in federal court, the appropriate claim is malicious prosecution.[4]  Under a traditional malicious prosecution claim, Plaintiff must first show that Defendants initiated the

---

[3] Plaintiff Jr. alleges one cause of action, Count X, which is not at issue in this Motion.

[4] In 1997, the Supreme Court of New Mexico merged the two torts of malicious prosecution and abuse of process into one cause of action, namely "malicious abuse of process." *DeVaney v. Thriftway Mktg. Corp.*, 953 P.2d 277 (1997), *cert. denied*, 524 U.S. 915 (1998).

4

original action. Plaintiff meets this element without issue, as it is undisputed that Defendant Officers initiated the prosecution on each of the initial three charges against Plaintiff.[5]

The second element is that the original action must have been terminated in favor of the Plaintiff. The Supreme Court has recognized this element as part of a Section 1983 claim for unconstitutional conviction or imprisonment. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Clearly, this element is also met. The third element is much more problematic. In order to support a claim for malicious prosecution, there must have been no probable cause to support the original arrest, continued confinement or prosecution. Plaintiff alleges that his wrongful arrest and forty day detention constituted an unreasonable seizure and a deprivation of his liberty in violation of the Fourth Amendment. As Defendants argue, however, a necessary component of the legality of the arrest is whether or not the Officers had probable cause to arrest Plaintiff for the charged offenses. Thus, this Court must initially decide whether or not the state court made a determination of probable cause in denying the motion to dismiss the grand jury indictment based on prosecutorial misconduct.

    1.    <u>Collateral Estoppel</u>

As noted by Defendants, federal courts must give preclusive effect to a state court determination. 28 U.S.C. § 1738. Accordingly, under New Mexico law the doctrine of collateral estoppel must be applied by this Court when (1) the parties are the same or in privity with the

---

[5] Defendant Officers' argument that the prosecutor and grand jury decide what charges to bring is misplaced. *See, e.g., Robinson v. Maruffi*, 895 F.2d 649, 656 (10th Cir. 1990)(holding that if police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him).

parties in the original action; (2) the subject matter or cause of action in the two matters are different; (3) the ultimate facts or issues were actually litigated; and (4) the issue was necessarily determined. *See, e.g. Reeves v. Wimberly*, 755 P.2d 75, 77 (Nm.Ct. App. 1988). In addition, "[c]ollateral estoppel may now be used to preclude relitigation of an issue if the party against whom it is to be applied was a party or in privity with a party in the earlier suit and had a full and fair opportunity to litigate this issue in that earlier action." *Id.* at 78.

The record reflects that on October 9, 2003, Plaintiff filed a motion to dismiss the grand jury indictment based on prosecutorial misconduct. On March 11, 2004, a state district judge issued an order denying that motion. After reviewing the motion and the subsequent order, the Court finds that the evidence presented to the state court was substantially similar to the facts alleged in the instant Complaint. In the motion filed in state court, defense counsel pointed out a number of alleged deficiencies in the affidavit that are now raised again here. Plaintiff sought to have the indictment dismissed based upon prosecutorial misconduct, arguing that the prosecutor selectively solicited and presented police officer testimony while failing to present allegedly exculpatory audio and/or video-tape evidence, all in a manner that violated Plaintiff's right to a fair trial.

Plaintiff alleges that the Defendants arrested and wrongfully prosecuted him based upon inflammatory and misleading testimony and a failure to consider exculpatory evidence. Implicit in this argument is Plaintiff's belief that these items considered collectively do not support a finding of probable cause or, in the alternative, Defendant Officers did not, absent manipulation, have adequate information to arrest and hold him. The purpose of the motion was to determine whether Plaintiff, through the indictment proceedings, was denied a fair and impartial presentation of evidence before the Grand Jury, which in this case can only be defined as a lack

of probable cause. This was a necessary determination as to whether Plaintiff should have been bound over for trial.[6] But for this determination, there would have been no trial and no judgment of acquittal. Thus, the facts underlying the issue of probable cause were sufficiently and necessarily determined by the state court in its order. *See. e.g., Bodtcher v. Jensen*, 2006 U.S. Dist. LEXIS 49431, at *11 n.2 (D. Utah July 20, 2006)(holding that if a Defendant is able to demonstrate on summary judgment that the evidence presented at the preliminary hearing was no different than the evidence upon which he secured an arrest warrant, Plaintiff's claims based on the allegedly wrongful arrest/inadequate investigation will fail based on collateral estoppel principles); *see also, Luben Industries Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983)(holding that to be a final determination for collateral estoppel purposes, the determination does not have to be a final judgment, but merely "sufficiently firm to be accorded conclusive effect").

    2.    <u>Qualified Immunity</u>

Even if the state court did not explicitly or implicitly decide the issue of probable cause, this Court holds that the Defendants are immune from prosecution on the malicious prosecution claim. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In addition, "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v.*

---

[6]The Court notes that this was in addition to a probable cause determination by the magistrate judge on March 17, 2003. *Defendants' Motion for Partial Summary Judgment*, Ex. 2.

*Bryant*, 502 U.S. 224, 229 (1991)(quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)); *see also*, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)(granting immunity to law enforcement officials who reasonably but mistakenly conclude that probable cause is present).

Qualified immunity must be resolved at the earliest possible moment, for it shields government officials from liability under 42 U.S.C. § 1983 and the weighty litigation that could detract from the future performance of their duties. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Upon a defendant's assertion of qualified immunity at the summary judgment stage, a plaintiff must meet a heavy two-part burden and demonstrate that: (1) officers violated plaintiff's constitutional or statutory right, and (2) the right was clearly established at the time of the alleged conduct. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998). Only if the Plaintiff clearly establishes that he has satisfied his two-part burden must the defendant demonstrate that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Medina*, 252 F.3d at 1128.

In defining the contours of the constitutional right, the Supreme Court stated the following:

> [it] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . (citation omitted) but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Hope v. Pelzer*, 122 S.Ct. 2508, 2515 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Plaintiff does not meet his burden by identifying "in the abstract" a clearly established constitutional right and claiming the defendant violated it. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988). Since there was probable cause

to arrest him, Plaintiff fails to demonstrate that Defendants violated his constitutional rights and thus does not meet the first prong of the test.

        a.      <u>Probable Cause</u>

Plaintiff alleges that he was illegally seized--arrested--and charged with murder and conspiracy to commit murder without probable cause. He argues that the affidavit prepared by Officer Brian Link in support of the arrest warrant contained deliberately false statements and omissions, thereby misleading the judge into issuing the arrest warrant. "It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996)(citations omitted). Additionally, "it is a Fourth Amendment violation to 'knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause.'" *Id.* If an arrest warrant affidavit contains false statements, "the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Id.* Where information has been omitted from an affidavit, a court will determine the existence of probable cause "by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." *Id.*

In applying those principals to the instant case, the Court finds that any inaccurate statements in the arrest warrant affidavit, as well as any omitted material, would not have altered the probable cause determination. The inaccuracies and omissions were by no means crucial to the ultimate determination of whether or not there was probable cause to arrest Plaintiff. The operative facts in this case demonstrated that Plaintiff was physically involved in an altercation in which Mr. Grant suffered stabbed wounds. The alleged inaccuracies in the affidavit as written

by Brian Link in his interview with Mr. Ponce include the following statements: "he and [Mark Pallotino] went to Mike's neighbor's house across the street" and that "[Mark Pallotino] went to the front door while he went to the side of the residence. After [Mark Pallotino] had knocked on the front door," Mr. Ponce stated that he "heard a scuffle in the rear of the residence" and reacted by pulling out his knife. Mr. Ponce then stated that he "observed a man coming toward him swinging a pipe or bat [and that he] ducked and stabbed at the person several times . . . " before fleeing the area. With respect to Plaintiff, Officer Link indicated the following in the affidavit:

> Mr. Pallotino advised that he went to the aid of Mike and Mike's friend who were fighting with the subject. Mr. Pallotino stated that the subject had a weed torch in his hand which he took from the subject. Mr Pallotino admitted that he too fought with the subject from the residence and then left the scene, as did the others.

*Defendants' Motion for Partial Summary Judgment*, Ex. 1, p. 2. Officer Link also wrote that "Mr. Pallotino had admitted to dropping [the weed torch in the front yard of 1571 Bunker Hill Court] after taking it away from Mr. Grant." In addition to these inaccuracies, Plaintiff asserts that potentially exculpatory evidence was withheld from the magistrate judge and the Grand Jury. If the Court were to set aside any false statements, and were to include any alleged omissions, which aren't exactly exculpatory[7], the affidavit still contains ample support to warrant a finding of probable cause. In addition, Plaintiff has not presented any evidence which suggests that any false statements or omitted facts, such as the disputed whereabouts of a videotaped interview, were the result of anything other than inadvertence or negligence.

---

[7]Plaintiff contends that the magistrate judge was not aware of the confession to the murder of Mr. Grant by Mr. Ponce; however, as Defendants correctly note, the statement that Mr. Ponce stabbed at Harry Grant several times is reflected in the affidavit for arrest warrant. Nonetheless, the magistrate judge found that despite this fact, there still was probable cause to arrest Plaintiff.

Thus, the Court holds that there was no constitutional violation. Accordingly, summary judgment shall be granted to Defendant Officers on the § 1983 claims raised in Count III against them in their individual capacities. In addition, with respect to the claims against Defendant Officers in their official capacities, said claims must be dismissed. "An official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *Moore v. City of Wynnewood*, 57 F.3d 924, 929 n.4 (10th Cir. 1995). Therefore, since Plaintiff's official capacity suit against Defendant Officers is simply a suit against the City itself, it must be dismissed for the reasons set forth below.

B.   Counts IV and V

As determined in section III A(2)(a) above, because Defendant Officers did not violate Plaintiff's constitutional rights, any claim against the City cannot stand. "A claim of inadequate training, supervision, and policies under 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised." *Webber v. Mefford*, 43 F.3d 1340, 1344-45 (10th Cir. 1994). Accordingly, the claims raised under 42 U.S.C. § 1983 in Counts IV and V for municipal liability and supervisory liability as against both Defendant Officers and the City in the official-capacity suit fail.

C.   Count VI - § 1983 Unlawful Seizure/False Arrest

In Count VI, Plaintiff brings a claim under 42 U.S.C. § 1983 for unlawful seizure and/or false arrest; however, he specifically alleges that Defendant Officers failed to knock and announce their presence prior to serving the arrest warrant at his home. Thus, the facts alleged tend to support a theory attacking the manner by which he was arrested, rather than support allegations for a traditional false arrest claim. In the Tenth Circuit, "the claims of false arrest, false imprisonment, and malicious prosecution must be premised on a lack of probable cause."

11

*Hoffman v. Martinez*, 92 Fed. Appx. 628, 631 (10th Cir. 2004)(internal citations omitted); *see also, Evans v. Dugger*, 1995 U.S. App. LEXIS 4891, at *4 (10th Cir. Mar. 13,1995)(holding that, with respect to an acquitted plaintiff, there is no 1983 liability for false arrest, false imprisonment, or malicious prosecution so long as sufficient probable cause existed at the time of arrest to preclude these claims).  Having already determined the existence of probable cause to arrest Plaintiff, the Court will analyze Count VI as an alleged violation of the "knock and announce rule."

The "knock and announce rule" is rooted in the Fourth Amendment's protection against unreasonable search and seizures.  *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995). The statutory standard which governs the officers conduct in the instant case is contained in 18 U.S.C. § 3109, which codifies the knock and announce procedure. Section 3109 provides:

> The officer may break open any outer or inner door or window or a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Section 3109 applies when officials attempt to enter a house to execute an arrest warrant.  *Miller v. United States*, 357 U.S. 301, 309 (1958).  In the Tenth Circuit, "compliance with 3109 may be excused only when exigent circumstances exist." *United States v. Knapp*, 1 F.3d 1026, 1030 (10th Cir. 1993).  Defendants have not specifically addressed the allegations contained in Count VI of the Complaint; rather, they group this count in with their request for dismissal of all other 42 U.S.C. 1983 claims, perhaps due to the way that Plaintiff chose to frame the claim for relief.  Nonetheless, Defendant Officers did not suggest the existence of exigent circumstances justifying their failure to knock and announce, and the Court can discern none from the record.  At this point, there is dispute regarding a material factual issue and Defendant Officers' request

for dismissal of Count VI is denied.[8]

      D.    <u>Count VII - § 1983 Unlawful Detention/False Imprisonment</u>

In Count VII, Plaintiff alleges that his imprisonment for forty days before making bail was a violation of his constitutional rights under the Fourth and Fourteenth Amendments to be free from both unreasonable seizure and an unreasonable deprivation of liberty. To maintain a false imprisonment claim under § 1983, a plaintiff must demonstrate the elements of a common law claim by demonstrating that his Fourth Amendment right to be free from unreasonable search and seizure has been violated. *See Taylor*, 82 F.3d at 1561. Under New Mexico law, "a good faith belief in the lawfulness of the action ordinarily requires probable cause to arrest." *State v. Johnson*, 930 P.2d 1148, 1154 (N.M. 1996)("a common-law defense to a civil wrongful arrest or a false imprisonment suit also requires only that the officer prove that he or she acted in good faith and with probable cause and therefore lawfully under the circumstances"); *see also, Hoffman, supra,* at 631. Since this Court has previously determined that probable cause did exist to arrest Plaintiff, a claim for false imprisonment cannot lie and Count VII is dismissed.

      E.    <u>Count IX - § 1983 Equal Protection-14th Amendment</u> [9]

In Count IX of the Complaint, Plaintiff alleges that he was treated differently from his

---

[8] In *Hudson v. Michigan*, 126 S. Ct. 2159, 2170 (2006), the Supreme Court addressed the issue of the exclusionary rule and its inapplicability to violations of the knock and announce requirement. Nonetheless, the Court observed that, when dealing with incompetent and unlawful behavior of police officers, there are "civil remedies, such as those available under 42 U.S.C. § 1983, that provide restitution for discrete harms." *See also, Richards v. Wisconsin*, 520 U.S. 385, 393 n.5 (1997) (holding that the knock and announce requirement allows individuals "an opportunity to themselves comply with the law and to avoid the destruction of property occasioned by a forcible entry," as well as an opportunity to prepare themselves for the entry).

[9] The Complaint is numbered incorrectly and skips from Count VII to Count IX. Count IX of the Complaint should actually be Count VIII.

co-defendants in the criminal case in violation of the equal protection clause of the Fourteenth Amendment. Specifically, under a "class of one" theory, Plaintiff alleges that his arrest was motivated by a "spiteful effort to get him for reasons wholly unrelated to any legitimate state objective." To demonstrate a constitutional violation under the "class of one" theory, Plaintiff must establish two elements: (i) that the Defendants acted with discriminatory intent; and (ii) that the Defendants treated the plaintiff differently from others who were similarly situated without a rational basis for doing so. *Bartell v. Aurora Public Schools*, 263 F.3d 1143, 1149 (10th Cir. 2001). If distinctions between similarly situated individuals are to withstand an equal protection analysis, such distinctions must be reasonable, not arbitrary, and must rest on grounds having a fair and substantial relation to the object of the legislation. *Stanton v. Stanton*, 421 U.S. 7, 14 (1975).

In an attempt to limit the reach of class of one equal protection cases, the Tenth Circuit has looked to Justice Breyer's concurring opinion in *Village of Willowbrook v. Olech*, 528 U.S. 562, 565-66 (2000) in "demanding that plaintiffs present evidence not merely of arbitrariness but of malice or ill-will against the plaintiff." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004). Though Plaintiff has alleged "spite" as the reason for his treatment relating to his arrest and prosecution, the analysis does not cease with this allegation alone; rather, as in *Stillwater,* the Court must look to the specific actions taken by Defendant Officers as alleged by Plaintiff. In *Stillwater,* the plaintiff failed to identify any "specific actions of the defendants that both were wholly arbitrary and lacking in legitimate justification and also had a concrete effect on [plaintiff's] rights." *Id.* at 1212.

Here, the ultimate decision to prosecute Plaintiff was made not by Defendant Officers, but by the district attorney, who is not a defendant. Nonetheless, Plaintiff alleges that Defendant

Officers' actions were discriminatory or wholly arbitrary. The problem here, as was the case in *Stillwater,* is that the specific actions allegedly taken by the Defendants, including the decision to utilize the SWAT Team in Plaintiff's arrest, failing to advise him of Miranda rights, ensuring his incarceration for 40 days in a small cell in isolation, and setting a higher bond amount, even assuming they are every bit as improper and discriminatory as Plaintiff alleges, were not final decisions, that is, they were only steps in a process leading toward the final decision to take Plaintiff to trial. As Defendant Officers correctly observe, "[a] plaintiff may not base an equal protection challenge to intermediate steps in a decisionmaking process, where the ultimate result was not discriminatory." *Id.* In fact, Defendant Officers validly dispute responsibility for some of these decisions, such as having any input in setting the bail amount or exercising any physical control over the detention center. Furthermore, they have offered an explanation as to why Plaintiff would not be placed in general population (due to his former status as a corrections officer) and have already identified that Defendant was not under arrest at the time of his interview with police. Since Plaintiff cannot meet the two elements set forth above, the Court finds no violation of the Fourteenth Amendment and will dismiss Count IX of the Complaint.

    F.    <u>Count I - Malicious Abuse of Process</u>[10]

Plaintiff also brings a claim for malicious abuse of process pursuant to New Mexico state law. New Mexico law deviates slightly from the general common law principles of malicious prosecution considered above because New Mexico has merged the two torts of abuse of process and malicious prosecution, discussed *supra* at footnote 2. *DeVaney v. Thriftway Mktg. Corp.*,

---

[10]Though Defendants do not explicitly request the dismissal of Count I in their Motion, Defendants do refer to ¶ 114 of the Complaint when arguing that certain of Plaintiff's claims are barred by collateral estoppel. Since ¶ 114 of the Complaint is part of the allegations supporting a state claim for malicious abuse of process, this Court will in turn address this state law claim.

953 P.2d 277, 282 (1997).  The elements comprising the New Mexico state tort of malicious abuse of process are: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. *Id.* at 282-83.  As stated above, Defendant Officers clearly initiated judicial proceedings against Plaintiff on all three charges, and if liability were established Plaintiff could undoubtedly show damages as a result of his brief incarceration and other inconveniences. Plaintiff falls short on the third element, however, by failing to offer any competent evidence indicating that Defendant Officers acted to accomplish an illegal objective and used the system to further that end. In fact, Plaintiff's only evidence on this element is the broad assertion that Defendant Officers had no probable cause to support the charges against him, thus forcing him to endure a criminal trial. Moreover, Plaintiff has similarly failed to offer evidence tending to show that Defendant Officers committed an act other than such as would be proper in the regular prosecution of a claim, falling short on the second element of the aforementioned test. Plaintiff undoubtedly relies, again, upon the original arrest being unlawful due to a lack of probable cause in order to meet the second element, but as stated above, the Court has determined otherwise. In sum, Plaintiff's blanket assertions and his misplaced reliance on the circumstances surrounding his arrest are insufficient to resist summary judgment on his state law claim of malicious abuse of process.  Therefore, the Court dismisses Count I of the Complaint.

      G.     FED. R. CIV. P. 56(f)

Plaintiff has filed a Rule 56(f) affidavit in order to obtain additional discovery should the Court hold that he has not met his factual burden.  FED. R. CIV. P. 56(f) provides the following:

16

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Under *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir.1984), "a mere assertion 'that the evidence supporting a [party's] allegation is in the hands of the [opposing party] is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).'" (quoting *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir. 1981)). The affidavit "must demonstrate precisely how additional discovery will lead to a *genuine issue of material fact*." *Ben Ezra, Weinstein & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)(emphasis added). "Furthermore, if the party filing the Rule 56(f) affidavit has been dilatory, or the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted." *Patty Precision*, 742 F.2d at 1266. In addition, there is no requirement in Rule 56 that discovery be complete before summary judgment can be entered. *Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1518 (10th Cir. 1994).

Upon reviewing *Plaintiffs' Counsel Rule 56(f) Affidavit*, the Court fails to see how an extension of time would allow Plaintiff to determine any additional operative facts that aren't already before the Court on this Motion. Plaintiff merely lists a number of general factual areas that he would like to explore through additional discovery, closing with his belief that "the facts associated with these items of discovery will support Plaintiffs' claims." Yet, the Rule 56(f) fails to state with specificity how the additional material will rebut the summary judgment motion. The affidavit does seek training information and policies relating to constitutional

rights, which may be under the control of the Defendant Officers and the City, but "exclusive control does not . . . require automatic relief under Rule 56(f)." *Price v. Western Resources, Inc.*, 232 F.3d 779, 784 (10th Cir. 2000)(internal quotation marks omitted).  Plaintiff has not adequately demonstrated how additional discovery on the various subjects listed will assist the Court in negating the probable cause element which underpins many of Plaintiff's claims.  Based on the affidavit's lack of specificity, Plaintiff's Rule 56(f) request is denied.

## IV.    Conclusion

As there was probable cause to arrest, Plaintiff cannot support his claim of malicious abuse of process in Count I nor his claim of malicious prosecution in Count III. Without probable cause, Counts IV, V and VII also fail.  Though the Court has found probable cause to arrest Plaintiff, the Defendant Officers have nonetheless failed to point to any item in the record excusing their failure to knock and announce.  Dismissal of Count VI is therefore denied.  With respect to the alleged equal protection violation raised in Count IX, the Court finds that the Defendants have sufficiently addressed any purported differential treatment of Plaintiff. Therefore, Count IX is dismissed.  Further, Plaintiff's request for a Rule 56(f) extension is denied due to a lack of specificity of the items sought.  WHEREFORE,

**IT IS ORDERED**:

**I.** *Defendants' Motion for Partial Summary Judgment* (*Doc.* #14) is granted in part and denied in part:

    **(1)** Denied as to Count VI; and

    **(2)** Granted as to Counts I, III, IV, V, VII, IX.

Dated May 8, 2007.

                      s/John Edwards Conway

                      _____
                      SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Corbin Hildebrandt, Esq.
Albuquerque, New Mexico

Counsel for Defendants:

Carolyn A. Wolf, Esq.
Randy S. Bartell, Esq.
Montgomery & Andrews, PA