IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK A PALLOTINO, SR., and
MARK S. PALLOTINO, JR.,

      Plaintiffs,

vs.                                                        No. CIV-06-06 JEC/WDS

CITY OF RIO RANCHO, ACTING CHIEF OF
POLICE CAPT. MICHAEL BAKER, DAVID
HUBBARD, JEREMY MELTON, BRIAN LINK,
ROBERTA RADOSOVICH, S.W.A.T. TEAM
COMMANDER LT. SCOTT KELLOGG, and
JOHN OR JANE DOES I-X, in their official
and individual capacities,

      Defendants.

**AMENDED MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court following a jurisdictional dismissal and remand from the Tenth Circuit Court of Appeals. *Pallotino v. City of Rio Rancho*, 2009 U.S. App. LEXIS 22940 (10th Cir. 2009). Consistent with the Court of Appeals' Order and Judgment, I hereby revisit my prior ruling on *Defendants' Second Motion for Partial Summary Judgment* (Doc. 99) ("Motion"). Having reviewed the Motion, the parties' submissions, the relevant authority, and heard oral arguments on September 24, 2008, I find the Motion well taken only in part and it is, therefore, granted in part and denied in part.

**I.    BACKGROUND**

This litigation arises from an incident in 2003 resulting in the arrest of Plaintiff Mark Pallotino, Sr. in Rio Rancho, New Mexico. Plaintiffs contend that Defendants lacked probable cause for the arrest of Pallotino, Sr. and that his subsequent prosecution and trial was, *inter alia*,

a malicious abuse of process.  Defendants' Motion seeks dismissal of Counts I, III, IV, V, VI, VII, and IX, or all of Pallotino Sr.'s claims made pursuant to 42 U.S.C. § 1983, as well as his state law claim for malicious abuse of process.  Defendants deny Plaintiffs' allegations pertaining to Pallotino, Sr. and argue they had probable cause for their actions in this case.  The only claim brought by Pallotino, Jr. (Count X) sounds in excessive force in violation of the Fourth Amendment and assault and battery.  Defendants have not moved for summary judgment on Pallotino Jr.'s claim or Pallotino Sr.'s claim for defamation (Count II).

The instant Motion is Defendants' second attempt to obtain dismissal of the § 1983 claims brought by Pallotino, Sr.  *See Defendants' Motion for Partial Summary Judgment (Doc. 14)* and *Defendants' Memorandum in Support of Motion for Partial Summary Judgment (Doc. 15)* (together "Prior Motion"), filed September 21, 2006.  Defendants initially argued probable cause for Pallotino Sr.'s arrest and related prosecution via collateral estoppel based on the Sandoval County District Court's Order Denying Plaintiff Pallotino, Sr.'s Motion to Dismiss the Grand Jury Indictment.  *Memo. (Doc. 15)* at 5-7.  Although this Court initially granted Defendants' Prior Motion in part, it ultimately determined that collateral estoppel did not apply because probable cause had not been fully and fairly litigated in the state district court proceeding.  *See Memorandum Opinion and Order Granting in Part Plaintiffs' Motion to Reconsider Order (Doc. 41)*, filed September 20, 2007.

Defendants' pending Motion seeks the Court's finding that probable cause exists for Plaintiff Pallotino Sr.'s underlying arrest as a matter of law and that Plaintiffs' claims for false arrest, false imprisonment, and malicious prosecution should therefore be dismissed.  Defendants first argue that probable cause was not determined by them but instead by a non-party, Deputy District Attorney Joseph F. Arite, who enjoys absolute immunity for his finding of probable

cause. *Motion* at 13. Recognizing that officers may nonetheless be liable to the extent that they misled the prosecutor, Defendants next argue there is no evidence that they misled Arite. *Id.* at 14. Plaintiffs contend that Defendants (1) communicated false, misleading and inflammatory evidence to Arite and (2) failed to communicate exculpatory evidence to Arite. *Pls.' Corrected Resp. In Opp. To Defs.' Second Motion for Partial Summ. Judgmt.* ("Resp.") at 24.

In addition to lack of probable cause, Plaintiffs claim that the S.W.A.T. team failed to follow the "knock and announce" when arresting Pallotino in his home. *Notice of Removal (Doc. 1)* at Complt., p. 22-23. Defendants seek dismissal of this claim, providing the affidavit of S.W.A.T. Commander, Defendant Scott Kellogg, which sets forth his basis for concluding there were exigent circumstances to justify Defendants' no-knock entry in this case. *Motion* at 19-20 & Ex. F. Plaintiffs do not address the knock and announce claim in their briefing, but they purport to dispute some of the material facts alleged by Defendants in support as to the knock and announce claim and challenge Defendant Kellogg's affidavit credibility on the grounds that he was allegedly disciplined for stealing cable services. *Resp.* at 12-15.

Defendants also seek dismissal of Plaintiffs' § 1983 claim for violation of the Equal Protection clause. Plaintiffs claim not that Pallotino was discriminated against as a member of any protected class, but that he was treated unfairly as a "class of one." The contention is that Pallotino was similarly situated to Michael Ginan and Steve Ponce, both of whom pled guilty to the underlying murder charge, yet Pallotino was treated differently due to animosity or spite on the part of the Rio Rancho Police Department. *Notice of Removal (Doc. 1)* at Ex. A, p. 24. Defendants argue this claim should be dismissed because the Rio Rancho Police Department ultimately treated Pallotino, Ginan, and Ponce identically, charging all three with murder. *Motion* at 24. Although Plaintiffs do not address the Equal Protective claim in their response

opposing Defendants' current Motion, they opposed summary judgment on this claim in their response to Defendants' Prior Motion, arguing that unlike Ginan and Ponce, Pallotino was arrested by the S.W.A.T. team and placed in a tiny lockdown cell, with bail initially set much higher than Ginan's or Ponce's. *Pls.' Resp. to Defs.' Prior Motion (Doc. 21)* ("Prior Response") at 23.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). In response to a motion for summary judgment, a party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." FED.R.CIV.P. 56(e)(2). The party opposing summary judgment must present specific, admissible facts from which a rational trier of fact could find in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. DISCUSSION

### A. False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiffs concede that their challenge to probable cause in this case is limited to the question whether Defendants asserted false information to or withheld exculpatory evidence from Deputy District Attorney Joseph F. Arite ("Arite"). *Response* at 24 ("the inquiry in this case focuses whether the evidence Defendants chose to communicate to Mr. Arite would have established probable cause for Defendants to arrest Pallotino, Sr. if they had included all the exculpatory evidence they had and not included all of the false, misleading and inflammatory

evidence that did not exist"). Although Plaintiffs initially asserted § 1983 claims based on Defendant Hubbard's allegedly false grand jury testimony, Plaintiffs abandoned such claims in their Response, which failed to raise any argument as to the grand jury testimony[1]. Plaintiffs confirmed their intent to abandon grand-jury-related claims at oral argument on the Defendants' Motion, as follows:

> THE COURT: Yeah. Okay. All right. I've got a few questions for you. Your probable-cause argument is based on alleged false information provided to Mr. Arite and alleged exculpatory information not provided Mr. Arite, correct?
>
> PLAINTIFFS' COUNSEL: That's it in a nutshell, Your Honor. We believe that inculpatory evidence that didn't exist was included in the arrest documents and search documents, and exculpatory evidence was omitted.

Excepting the knock and announce element of Count VI for unlawful seizure/false arrest, the existence of probable cause is a complete defense to Plaintiffs' § 1983 claims in Counts III (§ 1983 malicious abuse of process), VI (§ 1983 unlawful seizure/false arrest), and VII (§ 1983 unlawful detention/false imprisonment). *See, e.g., Powell v. Carter*, 182 F.3d 932 (Table), 1999 WL 314587, *1 (10th Cir. 1999) (affirming dismissal of false arrest, false imprisonment, and malicious prosecution claims based on the lower court's finding that probable cause existed for the plaintiff's underlying arrest); *Santillo v. Dept. of Public Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84, 173 P.3d 6 (noting that the plaintiff had to prove probable cause in order to prevail on

---

[1] Plaintiffs' Response purports to raise 89 additional material facts, including allegations that Defendant Hubbard lied to the grand jury, which are not meaningfully connected to any argument in opposition to summary judgment. It is Plaintiffs' burden to "set out *specific* facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2) (emphasis added). The Court is not obligated "to comb the record of previously available evidence and make a party's case for it." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

claims of false arrest, false imprisonment, and malicious abuse of process[2]).  If the Court finds that a reasonable officer could have believed that probable cause existed for Pallotino's arrest, then Individual Defendants Hubbard, Melton, and Link are entitled to qualified immunity.  *See, e.g., Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).  Because Plaintiffs' Counts IV and V for municipal liability against the City of Rio Rancho and supervisory liability against Defendants Michael Baker and Roberta Radosovich require a showing "that a municipal employee committed a constitutional violation," *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998), a finding of probable cause will also extinguish these claims.

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995) (internal quotation marks omitted).  The existence of probable cause is determined not by the extent of knowledge held by one particular officer, but by the collective information held by all the law enforcement officers involved in an arrest[3].

---

[2]Under New Mexico law, Plaintiffs' claim for malicious abuse of process could theoretically survive summary judgment despite the existence of probable cause, but only upon a showing of some procedural impropriety that would enable the Court to conclude that "process ... even if properly begun, has been perverted to accomplish an ulterior purpose for which it was not designed."  *Santillo*, 2007-NMCA-159, ¶ 22, 143 N.M. at 91, 173 P.3d at 13.  Because Plaintiffs have not argued any such procedural impropriety in this case, the Court will consider a finding of probable cause dispositive of Plaintiffs' Count I for malicious abuse of process under state law.

[3]Consequently, Plaintiffs' proposed additional facts 64-66 and 73, which allege that Defendants Link and Melton improperly signed affidavits for Pallotino's search and arrest warrants without personal knowledge of the facts, are not material.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (providing that a fact is "material" if it "might affect the outcome of the suit under the governing law").

*U.S. v. Troutman*, 458 F.2d 217, 220 (10th Cir. 1972); *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985).

In cases alleging that defendants have withheld exculpatory evidence, probable cause is determined by examining the evidence "'as if the omitted information had been included' and inquiring whether probable cause existed in light of all the evidence, including the omitted information." *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004) (quoting *Wolford v. Lasater*, 78 F.3d 489 (10th Cir. 1996)). In cases alleging falsified evidence, "the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Id.*

Plaintiffs contend the following pieces of exculpatory evidence were wrongfully withheld from Arite: (1) Steve Ponce's confession to stabbing Harry Grant in self defense, *Plfs.' Response* at 10, ¶ 30; and (2) Ponce's and Ginan's confirmations that Pallotino did not fight with Grant, *id.* at 11, ¶ 32. They allege the following false, misleading, and inflammatory information was wrongfully included in the arrest warrant: (1) that Pallotino admitted he fought with Grant on the night of March 12-13, 2003, *id.* at 10, ¶ 31; and (2) that Pallotino, Ginan, and Ponce talked about going over to Grant's house to hurt him, *id.* at 11, ¶ 31.

Contrary to Plaintiffs' allegations that Defendants withheld exculpatory evidence, Defendants present Arite's affidavit, which avers that "[w]hen I was considering whether probable cause existed to arrest Pallotino I was fully aware that Ponce had admitted to being the individual who had knifed Grant and that his description of what happened suggested that he was only defending himself against Grant." *Motion* at Ex. F, ¶ 10(l). Arite states he was similarly informed that Pallotino denied fighting with Grant; however, Arite felt this denial was inconsistent with Pallotino's admission that he disarmed Grant by taking away the weed burner.

7

*Id.* at Ex. F, ¶ 10(e). In Arite's judgment, "it is reasonable to infer ... that Pallotino had to fight with Grant to wrest the weed burner from Grant's grasp." *Id.* Arite goes on to explain as follows:

> What was important to my decisionmaking was that none of the suspects, including Pallotino, called 911 to report the incident and to request assistance for Grant. Though Pallotino denied seeing blood on Grant's chest from the multiple stab wounds, his admission that he was within arm's length of Grant when he took the weed burner away renders that denial highly improbable. The severity of Grant's wounds and the resulting blood loss were such that they would have been immediately apparent to someone coming so close to him, even in the low light conditions at the scene.

*Id.* at ¶10(k).

Plaintiffs respond solely by claiming that Arite's affidavit contains opinions that should not be relied upon by the Court due to purported credibility issues that should preclude summary judgment. *Resp.* at 4. Plaintiffs do not, however, cite to any facts that might raise a question as to whether the statements in Arite's affidavit are true.

"The general rule is that specific facts must be produced in order to put credibility in issue so as to preclude summary judgment. Unsupported allegations that credibility is in issue will not suffice." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2726 (3d ed. 1998). *See also Dept. of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331, 119 S.Ct. 765 (1999) (holding that appellants failed to raise a genuine issue of fact sufficient to preclude summary judgment simply by claiming a witness' testimony to be "of dubious credibility" without providing any specific factual support for this assertion).

Because it is impermissible for the Court to determine credibility or weigh evidence in

ruling on a motion for summary judgment, the focus is not upon the believability of Plaintiffs' challenge to Mr. Arite's credibility. *National American Ins. v. American Re-Insurance Co.*, 358 F.3d 736, 743 (10th Cir. 2004). Rather, the Court "must determine whether the non-movant offered any specific facts that demonstrate the existence of a material fact to be tried." *Id.*

Here, Plaintiffs offer no specific facts with regard to Mr. Arite. The Court specifically asked Plaintiffs' attorney at the hearing on Defendants' Motion what specific facts would be offered pertaining to Mr. Arite's credibility. In response, counsel asserted that Arite's credibility was a jury matter. This is not sufficient to raise a genuine issue of material fact so as to defeat a motion for summary judgment. *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988) (holding that "[i]n a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial").

Arite's affidavit not only demonstrates that he was aware of the allegedly exculpatory evidence when determined there was probable cause to arrest and prosecute Pallotino, but it also indicates that the alleged false information provided to Arite had no affect on his determination of probable cause. Regardless whether Pallotino admitted to fighting with Grant, Arite felt Pallotino's admission that he took the weed burner away from Grant was tantamount to admitting such a fight. Also irrelevant to Arite's determination of probable cause was any earlier discussion amongst Pallotino, Ponce, and Ginan.

Plaintiffs do not dispute the facts sworn by Arite[4], and they fail to make any showing

---

[4] At the September 24, 2008 hearing on Defendants' Motion, Plaintiffs referenced the affidavit of former City of Rio Rancho Police Lieutenant Arlen Norby, indicating that it would contradict the facts as sworn by Arite. Upon review of Lt. Norby's affidavit, however, it contains no reference to Arite and no facts that could be construed to dispute the facts sworn to

sufficient to create a genuine issue of material fact as to Arite's credibility. As a result, the Court finds there are no genuine issues of material fact as to Plaintiffs' claim for violation of the Fourth Amendment related to issuance of the arrest or search warrant and will, therefore, grant Defendants' Motion for Summary Judgment as to Counts I, III, IV, V, VI, VII, and IX.

### B. Knock and Announce

In the execution of an arrest or search warrant, officers must generally "knock and announce" their presence prior to entering the subject address. 18 U.S.C. §3109; *Miller v. United States*, 357 U.S. 301, 308-309, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). "[T]he presumption in favor of announcement gives way when exigent circumstances exist." *United States v. Gay*, 240 F.3d 1222, 1228 (10th Cir. 2001). "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile." *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed. 2d 615 (1997).

> The conclusion of exigency ... must be especially clear ... where there was no knock or warning whatsoever, where there was no information as to who was in the house, ... and where the occupants of the house could be injured as a result of the injury.

*United States v. Stewart*, 867 F.2d 581, 584 (10th Cir. 1989).

The Tenth Circuit utilizes a two-part test to determine the validity of exigent circumstances in knock-and-announce cases: "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves

---

by Arite. Although Lt. Norby's affidavit is clear that he disagrees with the finding of probable cause, Lt. Norby's opinion is not sufficient to create a factual dispute that would preclude summary judgment. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (providing that "if officers of reasonable competence could disagree [as to probable cause], immunity should be recognized").

or others, and (2) the manner and scope of the search is reasonable." *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2007). Evaluation of these factors should be "guided by the realities of the situation presented by the record," *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998), "from the perspective of reasonable officers who are legitimately concerned not only with doing their job, but with their own safety," *United States v. Colonna*, 360 F.3d 1169, 1176 (10th Cir. 2004).

Factors noted by the Tenth Circuit to be sufficient to justify a no-knock entry include: "[] a prior history of violence in interacting with the police, [] a record of prior convictions that indicate a predilection towards violence, [] a suspicion that defendant was engaged in narcotics trafficking, [and] other exigent circumstances such as children playing nearby or evidence of counter-surveillance activities." *United States v. Nielson*, 415 F.3d 1195, 1200 (10th Cir. 2005). Given that Defendant Kellogg's affidavit establishes many of these elements in the present case, including in particular Pallotino's previous arrests for violence against law enforcement and others, the Court finds that a reasonable officer could conclude there were exigent circumstances justifying the failure to knock and announce in this case. The Court will therefore grant Defendants' motion for summary judgment as to Count VI insofar as it pertains to the failure to knock and announce.

Defendants in the present case contend their "no-knock entry" was justified based on the following exigent circumstances, according to the affidavit of S.W.A.T. Commander Scott Kellogg: (1) Pallotino was wanted for murder; (2) Pallotino was known to possess firearms; (3) Pallotino could competently use martial arts against another person; (4) Pallotino was previously arrested for aggravated battery on a police officer; (5) Pallotino had been previously arrested "several times" for violence against others; (6) Pallotino had previously been arrested for

11

possession of cocaine, which could produce a "heightened state of excitement"; (7) evidence of Pallotino's mental instability in prior encounters with law enforcement and concern that he may have been on steroids; (8) Pallotino's experience using physical force upon others as a bouncer; and (9) potential loss of the element of surprise if the officers announced their presence. *Motion* at 9-10 & Ex. F.

Again, Plaintiffs appear to oppose summary judgment[5], claiming that Defendant Kellogg's affidavit contains opinions which "are credibility issues for the fact finder." *Resp.* at 4. Pallotino Sr.'s opposing affidavit states that he has never used cocaine or steroids and never been convicted of "battery, assault on an officer, battery or any other violent crime." *Id.* at Ex. 3, p. 5-6. Beyond these purported fact disputes, Plaintiffs also contend that Defendant Kellogg's affidavit should not be accepted because he was "disciplined for stealing free cable services" and that he was therefore "caught in a crime of dishonesty." *Id.* at 16, Ex. 14, p. 87-88.

Plaintiffs' after-the-fact evidence that Pallotino has never used cocaine or steroids and never been convicted of "any other violent crime" is not material to the existence of exigent circumstances. The focus of the inquiry is the reasonableness of Defendant Kellogg's suspicion

---

[5]Plaintiffs do not address Defendants' legal arguments pertaining to the knock and announce claim, failing to cite any legal authority or assert any arguments opposing Defendants' position. The Court is not obligated to make Plaintiffs' arguments under these circumstances. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (holding that the Tenth Circuit, "like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it"). The Court will, however, consider the purported fact disputes raised by Plaintiffs' attorneys in response to Defendants' statement of material and undisputed facts. *Reed v. Bennett*, 312 F.3d 1190, 1194-1195 (10th Cir. 2002) (holding that even "if the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law").

that his officers could face danger when encountering Pallotino.  *Nielson* at 1201 (noting "the standard for reasonable suspicion is not high, requiring no more than a 'particularized and objective basis' that exigent circumstances exist").  Based on the fact enumerated in Kellogg's affidavit and Plaintiffs' failure to directly contradict any of these facts in their Response, the Court finds there was a reasonable basis for Defendant Kellogg's concern for the safety of his officers and, accordingly, that the failure to knock and announce was justified.

Defendant Kellogg's alleged theft of "free cable services" is equally insufficient to preclude summary judgment.  Contrary to Plaintiffs' contention, there is no evidence either that Kellogg was caught in a crime of dishonesty or that he was disciplined by the Police Department for cable-related issues.  For their argument, Plaintiffs cite to a deposition of Defendant Michael Baker in a separate case.  *Resp.* at 15.  Examination of Baker's testimony indicates only that Kellogg was one of the officers under investigation for having an illegal cable hook-up.  *Resp.* at 15 & Ex. 14, p. 88:13-17.  In portions of the same deposition provided by Plaintiffs' counsel, however, Baker states it is not true that Kellogg confessed to stealing premium cable channels.  *Id.* at Ex. 14, p. 65:5-15.  Plaintiffs therefore lack evidence of any specific facts to support their contention that Defendant Kellogg's affidavit is not credible.

Not only do Plaintiffs overstate the significance of Defendant Baker's testimony on the credibility issue, but the offered evidence is also not admissible.  Rule 609 of the Federal Rules of Evidence provides for the admission of evidence as to criminal convictions only. FED.R.EVID. 609.  Since the facts indicate that Kellogg was merely under investigation for having an illegal cable hook-up, Defendant Baker's deposition testimony is not admissible for the purpose of attacking the credibility of Defendant Kellogg.  FED.R.CIV.P. 56(e)(1) (requiring supporting or opposing evidence to be admissible).

### C. Equal Protection

The Tenth Circuit recognizes that "unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004).

Special caution is appropriate in class-of-one cases concerning law enforcement "[b]ecause the exercise of prosecutorial discretion implicates a host of variables from the relative culpability of the defendants to the optimal deployment of prosecutorial resources." *Id.* at 1214. Such variables include "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan"–all factors which "are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1995)).

Critical to successfully stating a claim for an Equal Protection violation as a class-of-one is "an adequate showing that similarly situated persons were treated differently." *Id.* At 1212. The Tenth Circuit has rejected a number of class-of-one claims for failing to make this showing. *See, e.g., Bruner v. Baker*, 506 F.3d 1021, 1029 (10th Cir. 2007) (dismissing equal protection class-of-one claim after finding the plaintiff was "in a unique position, defying easy comparison with other[s]" and, further, that the plaintiff had "failed to point to any similarly situated individuals, let alone similarly situated individuals treated differently"); *Grubbs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006) (noting "the more glaring absence of evidence showing that defendants enforced trespassing laws in any different fashion with respect to other, similarly situated residents of the county").

In *Jennings*, which involved allegations that law enforcement failed to adequately investigate or prosecute the plaintiff's allegations of rape against four football players for Oklahoma State University, the Tenth Circuit noted

> Nowhere in the over 550 pages of evidence submitted by Plaintiff to the district court does she supply *any* information regarding the allegedly similarly situated rape victims. What were the relative strengths of those cases? In how many was the victim's consent a central issue? Did other victims admit to being drunk? Did the rapes occur in a party setting? Did any other victim state that she would have trouble identifying the perpetrators? Were the other case serial rapes where the victim admitted that she would have probably consented to sex with at least one of the suspects? Did any of the other victims sign waiver forms? Did any of them sign a second time, after being reinterviewed by a more supportive police officer? Without answers to questions such as these, neither this Court nor a jury could meaningfully compare Plaintiff's treatment to that of other rape victims.

*Id.* at 1215.

Plaintiffs in the present case argue that Michael Ginan and Steve Ponce were similarly situated to Pallotino, Sr. but treated differently in that[6] (1) Ginan and Ponce had their rights read to them and thus knew they were under suspicion of murder at the time Defendants interviewed them, yet Pallotino, Sr. was not *Miranda*-ized at the time of the initial interview; (2) Ginan and

---

[6]Plaintiffs' Response does not address the Equal Protection claim other than to state by way of introduction that "Plaintiffs will present evidence that Pallotino, Sr. Was treated differently from the other two individuals who last saw Harry Grant alive and who were also arrested in connection with Grant's death." *Resp.* at 3. Plaintiffs also assert that they "have presented multiple filings containing the law and standards for all of Plaintiffs' claims" and "due to the volume of information this response must contain, they do not repeat those presentations here." *Id.* at 1. Because Plaintiffs do not reference particular filings, the Court will *sua sponte* consider Plaintiffs' prior Response Brief in Opposition to Defendants' prior Motion for Partial Summary Judgment. The Court cautions counsel for Plaintiffs to provide complete briefing in the future. Local Rule 7.1(a) permits parties to "adopt by reference another party's motion or other paper by making specific reference to the filing date and docket number of such motion or other paper." D.N.M.LR-Civ.7.1(a).

Ponce were not arrested by a S.W.A.T. team like Pallotino, Sr.; (3) Ginan and Ponce were not "placed in a tiny lockdown cell" like Pallotino, Sr.; and (4) Ginan's and Ponce's bails were set much lower than Pallotino, Sr.'s initial bail setting. *Pls.' Resp. In Opp. To Defs.' Prior Motion for Partial Summ. Judgmt.* at 23.

Despite Plaintiffs' position that Ginan and Ponce were similarly situated, Plaintiffs admit that unlike Pallotino, Sr., both Ginan and Ponce pled guilty to the underlying murder[7]. *Pls.' Resp. In Opp. To Defs.' Instant Motion* at 5.

Though Plaintiffs challenge Defendant Kellogg's credibility generally[8], they fail to refute many of the facts Kellogg alleges in his affidavit, attached by Defendants in support of the instant Motion. These facts further contradict Plaintiffs' assertion that Ginan and Ponce were similarly situated to Plaintiff. In particular, Plaintiffs do not dispute Kellogg's testimony describing multiple incidents between 1989 and 2001 in which Pallotino, Sr. had been accused or suspected of violence against others. Plaintiff's affidavit states only that he has "never been convicted of battery, assault on an officer, battery, or any other violent crime." *Pls.' Resp. In Opp. To Defs.' Instant Motion* at Ex. 3, p. 6. Plaintiff also admits he had martial arts training as attested by Defendant Kellogg in his supporting affidavit, *id.* at p. 5, and does not dispute that his appearance at the time of the arrest showed "visually obvious results of body building and weightlifting" or that he "react[ed] appropriately to law enforcement on some occasions while being very aggressive on other occasions," *see generally id.; Defs.' Mot.* at Ex. I, p. 6.

---

[7] Plaintiffs' proposed additional facts that Ponce stabbed Grant in self defense and that Ginan stated he had "always maintained that [he] didn't kill anybody" in spite of his guilty plea, *id.*, are immaterial.

[8] Plaintiffs offer no evidence tending to cast doubt on Defendant Kellogg's credibility.

Based upon the foregoing undisputed evidence, which appears to distinguish Plaintiff Pallotino, Sr.'s situation from Ginan's and Ponce's, and Plaintiffs' failure to offer competent summary judgment evidence of similarities between Plaintiff on the one hand and other similarly situated suspects or arrestees on the other, the Court will grant Defendants' Motion for Partial Summary Judgment as to Pallotino, Sr.'s Equal Protection "class of one" claim on the grounds that neither the Court nor a jury can meaningfully compare Plaintiff's treatment to that of other similarly situated murder suspects or defendants.

### IV.   CONCLUSION

Having reviewed the parties' briefings, heard oral argument, and being otherwise fully informed, the Court determines there are no genuine disputes as to material issues of fact and summary judgment should therefore be granted in favor of Defendants as to Counts I, III, IV, V, VI, VII, and IX.

**IT IS ORDERED that *Defendants' Second Motion for Partial Summary Judgment (Doc. 99)*, filed May 14, 2008, is GRANTED as to Counts I, III, IV, V, VI, VII, and IX.**

DATED July 15, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Plaintiffs *Pro Se* :

Mark A. Pallotino, Sr.
Mark S. Pallotino, Jr.
Albuquerque, New Mexico

Counsel for Defendants:

Holly Agajanian, Esq.

Randy S. Bartell, Esq.
Montgomery & Andrews, P.A.
Albuquerque, New Mexico